UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-235-MOC

| JODY LYNN KIRBY, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | **ORDER** |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) |  |
| Defendant. | ) |  |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 15, 17). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.  Administrative History**

Plaintiff seeks judicial review of the Social Security Administration's decision denying his July 17, 2015, applications for a period of disability and Disability Insurance Benefits (DIB) and supplemental security income (SSI) benefits under Titles II & XVI of the Act, 42 U.S.C. § 423(a), alleging disability beginning May 10, 2015. (Tr. 167). Plaintiff was last insured for Title II benefits on March 31, 2018. (Tr. 169). An administrative hearing was held on December 12, 2017. (Tr. 44–70). An ALJ issued a denial decision on July 11, 2018 (Tr. 167–78), which decision was vacated and remanded for another hearing by the Commissioner's Appeals Council (AC) on October 15, 2019. (Tr. 185–89). The original vacated decision found that Plaintiff did not have a severe mental impairment. (Tr. 170). On remand, the AC pointed out that State agency medical consultants found moderate mental impairment based upon the diagnosis of

traumatic brain injury. (Tr. 187). Furthermore, the AC directed the case be sent for hearing and decision by another ALJ to moot Plaintiff's constitutional appointments clause challenge to the original ALJ "because, on July 16, 2018, the Acting Commissioner of Social Security ratified all Administrative Law Judge appointments and approved them as her own under the Constitution." (Tr. 188).

A second ALJ hearing was held on May 21, 2020, by the new ALJ. (Tr. 44–70). The new ALJ issued a decision on August 12, 2020. (Tr. 22–35). The Agency's AC denied review of this decision on March 19, 2021, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–7). In denying review, the AC refused to exhibit six pages of neuroscience evidence dated after the current ALJ decision because under the revised regulations this evidence did "not present a reasonable probability of changing the outcome of the decision." (Tr. 2). Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the Court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal

citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### IV. Substantial Evidence

#### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

#### b. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act. To qualify for Supplemental Security Income (SSI) disability benefits under Title XVI of the Act, insured status is not an eligibility factor. However, income and resources are a factor.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

In rendering his decision, the ALJ applied the five-step sequential evaluation process set forth in the regulations for evaluating disability claims. See 20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24 (2003). First, the ALJ found Plaintiff had the following severe impairments: traumatic brain injury (with tremors to bilateral upper extremities); right cubital tunnel syndrome post release, hypertension, degenerative disc disease, generalized anxiety disorder, and post-traumatic stress disorder. (Tr. 26, Finding 3). With explanation, the ALJ found plaintiff had the non-severe impairments of gout, right foot fracture, and cluster headaches. (Id.).

Plaintiff was 42 years of age on alleged disability onset, making him a younger person under the disability regulations. (Tr. 33, Finding 7). Plaintiff has a high school education. (Tr. 34, Finding 8). Plaintiff had past relevant work as a barber, which is classified as skilled and light in exertion. (Tr. 33, Finding 6).

The ALJ further found that Plaintiff had the residual functional capacity (RFC)[1] to perform a restricted range of sedentary work with the following limitations: Plaintiff will require a hand-held assistive device for ambulation; Plaintiff cannot climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, or crouch; can never crawl; cab frequently push and/or pull with his bilateral upper extremities; cab frequently grasp, handle, and finger with his

---

[1] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. § 404.1545.

bilateral upper extremities; and can occasionally reach overhead with his bilateral upper extremities. The ALJ further found that Plaintiff should have no exposure to hazards, such as unprotected heights and moving machinery. In addition, Plaintiff can perform unskilled work of a routine and repetitive nature in two-hour segments; can occasionally interact with the public; and can frequently interact with his supervisor and co-workers. The ALJ found that Plaintiff can work at a non-production pace (non-automated/ conveyor); and should work in a stable work setting. (Tr. 28, Finding 5).

With the assistance of the hearing's vocational expert (VE), the ALJ denied benefits at Step 5, of the sequential evaluation (discussed below) based on Plaintiff's ability to perform unskilled, sedentary work which exists in significant numbers in the national economy, such as the jobs of Addresser, Document preparer, and Sorter. (Tr. 34–35, Finding 10).

## V. DISCUSSION

Plaintiff presents three challenges to the ALJ's decision: (1) the decision is constitutionally defective; (2) the ALJ's RFC is not supported by substantial evidence; and (3) the ALJ improperly discounted the opinions of Dr. Murray and therapist Ryder.

### A. Plaintiff's Contention that the ALJ's Decision is Constitutionally Defective.

As his first assignment of error, Plaintiff argues that SSA's decision denying his disability benefits claim was constitutionally defective. He seeks a remand based on his constitutional claim. Plaintiff is not entitled to relief because he has not established compensable harm from the removal restrictions he challenges.[2] As the Supreme Court held in Collins v.

---

[2] This Court and other courts in the Fourth Circuit have repeatedly rejected Social Security plaintiffs' claims that ALJ's decisions are constitutionally defective based on a separation of powers argument. Because this path has now been well-trodden, the Court need not go into detailed discussion for why this claim fails.

Yellen, 141 S. Ct. 1761, 1787–89 (2021), even where an unconstitutional statutory removal restriction exists, a claimant seeking relief on that basis must show that the restrictions actually caused him harm. Plaintiff has not shown—and he cannot show—compensable harm from the any of the removal restrictions he cites, and therefore his request for a remand based on his constitutional claim is without merit. This first assignment of error is overruled.

### B. Plaintiff's Contention that Substantial Evidence Does Not Support the ALJ's RFC Finding

As noted, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform a restricted range of sedentary work. Plaintiff contends that substantial evidence does not support this finding. For the following reasons, the Court disagrees.

#### 1. The ALJ found Generally Persuasive the Opinions of State Agency Consultants

The ALJ gave State Agency medical and psychological consultants partial, and more than partial, weight in supporting the RFC. (Tr. 32–33). These consultants' opinions are given in a format detailing the evidence considered. Furthermore, in weighing their opinions, the ALJ specifically considered later evidence from the additional administrative proceedings resulting from the above-discussed AC remand. (Tr. 32). The Court agrees with Defendant that the opinions of State Agency reviewing consultants generally support the ALJ's RFC. (Tr. 32–33). See Lusk v. Astrue, No. 1:11-cv-196-MR, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013) (expert opinions of agency reviewing physicians may amount to substantial evidence where they represent a reasonable reading of the relevant evidence).

#### 2. Drs. Jack Drummond and Terry Kimberlee Support the ALJ's Physical RFC

Plaintiff alleges disability onset of May 10, 2015. On September 3, 2015, Dr. Jack Drummond opined that Plaintiff was capable of light exertional work with the ability to

stand/walk or to sit 6 hours in an 8-hour day despite subjective pain complaints. (Tr. 113). Dr, Drummond noted that Plaintiff had some limitation in his right upper extremity due to right cubital tunnel syndrome with bilateral tremors. (Id.). However, he noted that a cervical MRI showed no spinal cord abnormality. (Tr. 113).

On January 7, 2016, Dr. Terry Kimberlee also opined that Plaintiff was capable of light exertional work with the ability to stand/walk or to sit six hours in an eight-hour day despite subjective bilateral tremors and right-hand pain complaints. (Tr. 144). Dr. Kimberlee also found no evidence that Plaintiff's condition was worsening. (Tr. 145).

In weighing the supportability and consistency of the above opinions, the ALJ noted that they were given some four years earlier and that due to additional evidence submitted at the second hearing, the ALJ decided to further limit Plaintiff from light to sedentary work with additional postural and environmental limitations in the RFC. (Tr. 32–33).

### 3. Drs. Jonathan Mayhew and Lisa Renner Support the ALJ's Mental RFC

The ALJ gave the opinions of the State Agency consultants Dr. Jonathan Mayhew and psychiatrist Dr. Lisa Renner extra weight. (Tr. 33). The ALJ noted that these consultants determined that Plaintiff could perform simple, routine, repetitive tasks in a low stress, low social setting. (Tr. 32). On September 1, 2015, Dr. Jonathan Mayhew opined that Plaintiff was not significantly limited in getting along with coworkers, in responding appropriately to criticism from supervisors, and in maintaining socially appropriate behavior. (Tr. 131). Dr. Mayhew concluded that Plaintiff could perform simple, routine, repetitive tasks in a low stress, low social setting. (Id.).

On January 6, 2016, psychiatrist Dr. Lisa Renner also opined that, considering the mental evidence of record and activities of daily living, Plaintiff could perform simple, routine,

repetitive tasks in a low stress, low social setting. (Tr. 147). In so opining, Dr. Renner found Plaintiff was not significantly limited in carrying out even detailed instructions. (Tr. 145). Therefore, both physical and psychological consultants support the ALJ's RFC.

### 4. Supporting Psychological Evidence

The psychological evidence also supports the ALJ's findings. The ALJ noted that although Plaintiff alleged post-traumatic stress disorder and anxiety, Plaintiff's mental status exams were generally unremarkable. (Tr. 33). For example, the ALJ noted that in a visit to Mecklenburg Neurological Associates on September 23, 2015, after alleged disability onset, Plaintiff exhibited normal orientation, attention, fund of knowledge, and remote and recent memory. (Tr. 797).

In visits to Novant Health on September 18, 2017, and on November 28, 2017, Plaintiff was found to be alert and oriented with appropriate speech and affect. (Tr. 1283, 1346). Plaintiff declined a referral to treat alleged depression and anxiety. (Tr. 1283). In addition, a hospital discharge record dated April 26, 2020, found Plaintiff was cooperative upon examination and had appropriate mood and affect. (Tr. 2121). At that time, a doctor described Plaintiff as "a pleasant" person. (Tr. 4550). In an August 8, 2018, visit to Monarch, Plaintiff reported that he had issues with anxiety and depression for over ten years. (Tr. 2021). Yet, despite these reported longstanding issues, he was able to work until his alleged disability onset in May 2015.

In sum, the Court finds that the psychological evidence in the record supports the ALJ's RFC finding.

### 5. Plaintiff declined to appear for current psychological consultative examination

Additionally, Plaintiff refused to appear for a psychological consultative examination. On October 29, 2019, Plaintiff's counsel informed the Agency that Plaintiff declined to appear as

noticed for a psychological examination with Dr. Chad Rittenspach. (Tr. 481). Instead, Plaintiff requested this examination be performed by Plaintiff's "treating physicians" at CMC Behavioral Health in Charlotte, NC. (Id.).

Defendant contends, and the Court agrees, that there are problems with this refusal. First, Plaintiff attended a prior consultative examination on July 16, 2011, with Dr. Rittenspach, who at that time concluded that Plaintiff "has the mental capacity to withstand the rigors of employment" despite one attempted suicide in 2009. (Tr. 546). Dr. Rittenspach noted that Drs. Castro and Belgrave recommended reduced alcohol intake and mental health counseling, but there was "no indication Mr. Kirby pursued therapy or counseling outside of substance abuse treatment in 2009." (Id.). Moreover, August 8, 2018, Monarch Health records indicated that Plaintiff had only this single suicide attempt and that he denied having any further thoughts of harming himself or others. (Tr. 1984).

Second, it appears from the administrative record index that although Plaintiff was treated at CMC Randolph Behavioral Health Center in 2010, (Tr. 530), he was not treated again there until 2020, after the request for CE was made in 2019. The regulations provide that a claimant who refuses to attend a consultative examination may be found not disabled based upon that refusal. 20 C.F.R. §§ 404.1518, 416.918.

For the reasons stated herein, the Court finds that the ALJ's physical RFC has substantial evidentiary support. Furthermore, in formulating an RFC, the ALJ is not required to discuss each and every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865–66 (4th Cir. 2014). It is the claimant's burden to establish how any medically determinable impairments affect functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC

remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-6, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2012), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

### C. Plaintiff's Contention that the ALJ Improperly Discounted the Opinions of Dr. Murray and Therapist Ryder

Plaintiff also contends that the ALJ improperly discounted the opinions of Dr. Murray and therapist Ryder. For the following reasons, the Court disagrees.

**1. Dr. Murray**

First, the ALJ acknowledged that Dr. Jacquelyne Murray felt that Plaintiff could not hold any job due to subjective pain complaints and needed a cane or assistive device. (Tr. 32). The ALJ gave these opinions "little weight" as having no medical testing support of record and not consistent with objective findings of an October 2017 exam by Dr. Jay Indravadan, who found normal range of motion, no tenderness, no swelling, 5/5 grip strength in RUE and 4/5 in LUE and 4/5 in bilateral lower extremities. (Tr. 32, 1773). No mention was made of any need for an assistive device. (Tr. 1773). A May 16, 2019, a visit to OrthoCarolina found that Plaintiff had only a "a mildly antalgic gait" with a "negative straight leg raise." (Tr. 2060). A third-party adult function report left unchecked the box indicating the need for a cane. (Tr. 426). Furthermore, Dr. Murray's opinion is made on a pre-printed check-the-box disability form. (Tr. 1814). Pre-printed check-the-box forms are notoriously deficient. Courts have recognized the "limited probative value" of such forms, especially when they lack well-supported explanatory notes. See, e.g., McGlothlen v. Astrue, No. 7:11cv148, 2012 WL 3647411, at *6 (E.D.N.C. Aug. 23, 2012);

Shelton v. Colvin, No. 7:13cv470, 2015 WL 1276903, at *13 n.6 (W.D. Va. Mar. 30. 2015); and Leonard v. Astrue, No. 2:11cv48, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012).

**2. Therapist Ryder**

The ALJ noted that therapist Ryder's October 2018 report was internally contradictory, claiming Plaintiff could only flex shoulder to 90 degrees, but when distracted could easily reach overhead, and claiming Plaintiff's gait and balance required assistance but noting that that when he got to his car, he stood straight up and had sufficient balance to fold and lift his walker and transfer it into the car without difficulty. (Tr. 31, 2012). Therefore, the ALJ correctly gave "little weight" to Ms. Ryder's opinion that Plaintiff cannot perform sedentary work due to Ms. Ryder's inconsistent observations and also due to Plaintiff having normal 5/5 muscle strength in October 2016 and, as discussed above, in October 2017 and also in March 2019. (Tr. 31–32). Plus, the ALJ referenced the May 16, 2019 (and also July and November) visits to OrthoCarolina, which found Plaintiff had only a "a mildly antalgic gait" with a "negative straight leg raise" and moved easily from sitting to standing. (Tr. 32, 2060).

The ALJ is solely responsible for assessing a claimant's RFC and is not bound even by treating physician disability opinions in the face of other record evidence. See Russell v. Barnhart, 58 Fed. Appx. 25, 28–30, 2003 WL 257494, at **3–4 (4th Cir. Feb. 7, 2003) (upholding ALJ's rejection of treating physician opinion on basis that it was "unsupported by the treatment records"); Byrd v. Apfel, No. 98-1781, 1998 WL 911718, at *4 (4th Cir. Dec. 31, 1998) (Treating source opinion "was not supported by his own clinical findings").

In sum, Plaintiff's third assignment of error is overruled.

**VI. CONCLUSION**

The Court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 15) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 17) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: March 25, 2022

Max O. Cogburn Jr.
United States District Judge